Bartley, C. J.
Several interesting and important questions are presented for determination in this case, the most prominent of which involves the validity of the statute of the *13th of April, [6 1852, for the assessment and valuation of all property in this state, and for levying taxes thereon according to its true value in money. It is claimed that this law is in conflict with the constitution of the state, on the alleged ground, that it imposes a burden of taxation on the property of the complainant, employed in banking, greater than that which it imposes on the property of individuals; also, that it is repugnant to the constitution of the United States, on the alleged ground that it is in violation of a material and important provision, in the charter of the bank, contained in the statute of the 24th of February, 1845, to incorporate the State Bank of Ohio and other banking companies, which, it is claimed, constitutes a contract between the claimant and the State of Ohio.
The question whether the charter of an incorporated bank is a contract, and whether, upon this ground, the banks existing under the authority of the bank law of 1845, are, by virtue of the constitution of the United States, placed beyond the reach of the legislative control of the state over the power of taxation, was very fully considered by this court at the last term, and determined against the ground taken in the bill by the complainant in this case; and we see no reason to disturb the opinion then expressed. See Bank of Toledo v. The City of Toledo et al. 1 Ohio St. 623; Knoup v. *7 Piqua Bank, Ib. 603 ; Mechanics’ and Traders’ Bank v. Debolt, Ib. 591; and Debolt v. The Ohio Life Insurance and Trust Company, Ib. 563.
The question, whether the tax law of April, 1852, imposes a burden of taxation on property employed in banking, greater than that which is authorized by the constitution of the state, is one of grave import, requiring a careful and full examination. And the difficulties and embarrassments to which it has given rise, and is still causing in the collection of the public revenue, and enforcing the laws of the state, indicate the propriety of a very full expression of opinion by the court.
7] *The third section of the twelfth article of the constitution, which confers the authority for taxing property employed in banking, is as follows:
“ The general assembly shall provide by law for taxing the notes and bills discounted or purchased, moneys loaned, and all other property, effects, or dues, of every description, without deduction, of all banks now existing, or hereafter created, and of all bankers; so that all property employed in banking shall always bear a burden of taxation equal to that imposed on the property of individuals.”
This provision imperatively requires that all property, effects, and dues of every description belonging to banks should be taxed. The great variety of form and condition in which property is employed in banking, as well as its complex convolutions and varying character, is somewhat peculiar. But those things employed in this business, which constitute proper subjects of taxation, in whatever form or character they maybe found, must possess the essential elements and incidents of private property, and are therefore capable of being clearly and certainly ascertained and identified.
It is proper here to remark, that it is said to have been determined by high authority that the franchise of an incorporated bank is the subject-matter of contract, and property of a clear and distinct character. If the corpor*ate franchise of a bank be, in fact, property or effects of any description whatever, it is made a subject-matter of taxation by the imperative language of the constitution above recited, and should be placed on the list of assessments for that purpose.
But what is the fact? Does a corporate franchise, in sober truth and reality, possess the essential qualities of property? It is said *8, 9 that, the corporate franchise of a bank, conferring a peculiar legal capacity, and the high function of making and circulating paper money, is valuable — indeed, a thing of great value. But value is not the distinguishing attribute of property. The right of suffrage is esteemed valuable; a public office, with its emoluments, is valuable ; a license to keep a tavern, as formerly granted in this state, or a license to carry on any special business, which is prohibited’without *a special grant of authority from the government, may be [8 valuable; and a right to either df these things may be asserted and maintained in a court of justice, yet neither of them possess the essential qualities which constitute property. Our right to the free use and enjoyment of things which are in common, such as ah’, light, water, etc., is valuable; and our right to the free use of the public highways, and to many of the privileges and advantages derived from the government, may be valuable, and may be maintained by legal process. Tet none of these things come within the denomination of property. Those things which constitute the subject-matter of private property, are such as the owner may exercise exclusive dominion over in’the use, enjoyment, and disposal of them, without any control or dimunition, save only by the laws of the land. 1 Wend. Bla. 138. It is a fundamental principle, that “ property, considered as an exclusive right to things, contains not only a right to use those things, but a right to dispose of them either by exchanging them for other things, or by giving them away to any other person, without any valuable consideration in return, or even of throwing them away, which is usually called relinquishing them.” Kutherford’s Institutes, 20 Puffendorf, chap. 9, b. 7.
The statute under consideration provides as the basis for the tax upon banks: 1. The average amount of the notes and bills discounted or purchased, including all the loans or discounts of every description, at their actual value in money; and, 2. The average amount, at the like valuation, of all other moneys, effects, or dues of every description, *used and employed in banking with a view [9
It is said that capability of alienation or disposal, either by sale, devise, or abandonment, is an essential incident to property. 2 Kent. Com. 317.
A corporate franchise, therefore, being a mere privilege, or grant of authority by the government, is not property of any description, and consequently not subject to taxation under the above provision of the constitution.
*10 to profit. There is nothing in this provision of the law which is in conflict with the constitution. The complaint is not that the banks are taxed upon anything which is not a legitimate subject of taxation, but that -the burden of taxation imposed on pi*operty employed in banking is greater than that which the law imposes on the property of individuals; not that the rate of taxation is greater, but that, by the tenth section of the law, a large amount of the property of persons not engaged in banking, is substantially exempted from taxation, by allowing them to deduct their liabilities from the gross amount, of their moneys and credits, in furnishing their lists for taxation; and that the aggregate taxable valuation of property being thus less than it should be, the burden of taxation on property employed in banking, is proportionably too great. This, necessarily involves the question of the constitutionality of the deductions allowed by the tenth section of the law. The test, whether a question is presented for adjudication in a case, is not whether the case might not be decided on some other ground, but whether its determination becomes material in disposing of a point which is decisive, either in whole, or in part, of the case. The validity of this provision of the law, is necessarily drawn into question, has been elaborately argued by counsel on both sides, and is the main question presented by the parties for our determination in this case. The tenth section of the law is in these words: l
“ Seo. 10. In making up the amount of moneys and credits, which any person is required to list for himself or any other person, company, or corporation, he shall be entitled to deduct from the gross amount of moneys and credits the amount of all bona fide debts owing by such person, company, or corporation, to any other jierson, company, or corporation, for a consideration received; but no acknowledgment of indebtedness, not founded on actual consideration, believed, when received, to have been adequate, and no such acknowledgment made for the purpose of being so deducted, shall be considered a debt within the meaning of this section; and so much only of any liability?", as surety for others, shall be deducted, as the person making out the statement believes the surety is legally and equitably bound to pay, and so much only as he believes such surety will be compelled to pay on account of the inability or insolvency of the principal debtor; and if there are other sureties who are able 10] to contribute, then only so much as the surety in whose *behalf the statement is made, will be bound to contribute; provided, that nothing in this section shall be so construed as to apply to any bank, company, or corporation, exercising banking powers or privileges.”
*11 ' The effect of this provision, is to allow a very large amount of the moneys and credits in the state, belonging to persons not engaged in banking, to be exempt from taxation. The question whether exemptions or deductions thus permitted, are forbidden by the constitution, involves the consideration of the true interpretation of the second section of the twelfth article of the constitution, which is in the following language:
“ Sec. 2. Laws shall be passed, taxing, by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, and also all real and personal property, according to its true value'in money; but burying-grounds, public school-houses, houses used exclusively for public worship, institutions of purely public charity, public property used exclusively for any public purpose, and personal property, to an amount not exceeding in value two hundred dollars for each individual, may, by general laws, be exempted from taxation; but all such laws shall be subject to alteration or repeal, and the value of the property so exempted, shall, from time to time, be ascertained and published, as may be directed by law.”
The manifest effect of this constitutional provision, is to make property the basis, and the sole basis, of taxation. And the object being equality and fairness, it requires, by a true interpretation:
1. That the taxes shall be assessed on all property in the state, except the subjects of the specified exemptions.
2. That the taxes shall be assessed on all property, by a uniform rule. And,
3. That all taxable property shall be taxed at its true value in money.
An exposition of the fundamental principle upon which the constitutional provisions relating to taxation are founded, may aid in. their true interpretation.
Taxation is that tribute for the support of government, imposed on property in return for the protection and advantages which the government affords to the owner. It is an essential and fundamental requisite in the exercise of the power of taxation, that the burden should be imposed or apportioned with all practicable equality and justice. See Puffendorf *ch. 9, b. 7; Ruther- [11 forth, 27, 273; Bank of Toledo v. Bond, 1 Ohio St. 699. It is with a view to this essential condition, that any people consent to confer *12 this high civil function upon their government. Rutherforth’s Institutes of Natural Law, 272.
An unequal and unjust system of taxation prevailing in this state, was one of the most prominent causes of the call of the late constitutional convention, and of the adoption of the present state constitution. And in the formation and adoption of the constitution, the principle of taxation most just and equal in its operation, was very fully discussed and considered. It was conceded on all hands that the levying of taxps by the poll was oppressive, and should be prohibited; and property was made the sole basis of taxation. It was contended, however, by some, and has been suggested in the investigation of this case, that in adopting property as the sole basis of taxation, the most equitable rule would be to tax every person equally, not upon the value of all his property, but upon the amount which the value of all his property should exceed the amount of his indebtedness; in other words, upon the amount he would bo worth over and above the amount of his debts. This was, however, found wholly impracticable. In the complexity and various involutions of business, and the infinite variety of form and condition in which property and indebtedness are found to exist, it would not be practicable to ascertain, with any degree of certainty, equality, and fairness, the amount of property which every person was worth, over and above his indebtedness. And taxation being the tribute for the support of government, in return for the protection and advantages received by the owner, it is but fair and just that the burden should be proportioned to the amount of property owned and secured by the protecting hand of the government, and not to the amount which the value of a person’s property exceeded the amount of his indebtedness. It is not uncommon for a person to own property to a very large amount, consisting of lands and a great variety of chattel property, and yet be indebted 12] in *an amount far exceeding the value of all his property. A person might be extensively engaged in mercantile, mechanical, and other branch os of business, and the owner of property, both real and personal, to an amount exceeding a million of dollars in value, and yet be indebted to persons in other states, whose credits are beyond the roach of taxation, to an amount even greater than the value of all his property in this state. Would it be just and fair that such a person should be wholly exempt from taxation— that this immense amount of property, both real and personal, *13 should be favored by a total exemption, because of the indebtedness of the owner? Upon such a principle, what an immense amount of productive property of the state, both real and personal, would wholly escape taxation! "What inducements would such a system hold out to persons to prolong the payment of their debts! And to what a fearful extent would it lead, in the creation of fictitious liabilities, in fraud of the revenues of the state, the detection of which, requiring evidence, perhaps, from various parts of the Union, would be wholly beyond the reach of the tax assessors.
XTnder such a system, the most legitimate subjects of taxation would be liable to be withdrawn from the grand levy of the state every year. A, owning a farm assessed for taxation at ten thousand dollars, sells out to B, on a credit of ten years, for ten thousand dollars, and removes to Indiana, taking with him bis credits. B, owning nothing but the farm, and being indebted to the full extent of its valuation, would be entitled to hold it exempt from taxation ; and A, holding his credits in another state, would be beyond the reach of an assessment on them here. Again, C, residing in Kentucky, but owning personal property on his farm in Ohio, consisting.of horses, mules, and cattle, assessed for taxation at fifty thousand dollars, sells out to D on an extended credit for fifty thousand dollars. D would be entitled to hold this personal property exempt from taxation, while 0 is beyond the reach of taxation on his credits. And again, E purchases a stock of goods, and embarks in the ^mercantile business on his own capital, to the amount of [IS twenty thousand dollars. And F goes to New York and. purchases goods to the amount of twenty thousand dollars, on credit, and brings them into this state, and engages in the mercantile business to an extent equal to that of E. Under the system of taxation in question, E would be compelled to pay a tax upon his whole capital invested, while F, requiring equal protection from the government, would do a business on his twenty-thousand dollars’ worth of goods, exempt from all taxation. And this principle of taxation, carried out, would enable merchants in New York city, who are indebted more than they are worth, to bring their merchandise to Cincinnati, to the utmost extent of their control, and undersoil our own citizens, from the very fact that they could hold their property and do business wholly exempt from taxation. A system of taxation so unfair and unjust in its operation as this, would never be tolerated by any intelligent community.
*14 It must be conceded to be exceedingly difficult, if not wholly impracticable, to devise any system of taxation which shall be perfect in the equality and fairness of all its burdens. But the principle adopted and established by the constitution is certainly the only one which admits of an approximation to such a standard. This provision requires all property of every description in the state, to be taxed by a uniform rule and at its true value in money, with the exception of certain enumerated exemptions, in favor of charity, religion, the burial of the dead, and the public interests, etc.
The language of the constitution is comprehensive and explicit in the requirement, that all property of every description, excepting only that which falls within the specified exemptions, should be taxed. The only exception or exemption allowed in favor of individuals, is to be found in the words, “personal property to an amount not exceeding two hundred dollars in value, for each individual, may, by general laws, be exempted from taxation.” It has ever been the humane policy of our laws to allow a certain amount of personal 14] *property, sufficient to include the most essential and necessary articles for the support of a family, to be exempt from execution for the payment of debts. And it is in accordance with this benevolent regard for the necessities of life, that this limited exemption from taxation, in favor of individuals, is authorized by the constitution. But the very fact of this express exemption, excludes the idea that any other or further exemption can be made. • The language of the constitution authorizing the tax upon the property of individuals, is substantially as follows: Laws shall be passed taxing all the property of every description, belonging to individuals, excepting that personal property, to an amount not exceeding two hundred dollars for each indibiduai, may, by general laws, be exempted from taxation. This impei’ative requirement of the constitution, that all property should be taxed, is not to be evaded by any circuity or indirection. And to allow an individual, in furnishing the list of his property for taxation, to reduce the amount of his taxable property to an extent equal to the amount of his liabilities; or in other words, to deduct the amount of his liabilities from the amount of his taxable property, whether it consists of money and credits, or other property, would, in substance and effect, amount to the same ■thing as an express exemption from taxation, to the extent of such deduction.
It has been claimed that section second of the constitution above *15 recited, specifies two distinct classes of property, prescribing a different mode of taxation for each, and not requiring tbe same rate or burden to be assessed upon each. Thus, it is said, that moneys, credits, investments in bonds, stocks, joint stock companies, etc., are required to be taxed by a uniform rule ; but that all other property, both personal and real, is required to be taxed at its true value in money. If this interpretation be correct, the great object of these constitutional j>rovisions, which has been supposed to be equality and fairness in taxation, might.be defeated; for it would permit a burden of taxation to be imposed upon a person *-whose prop- [15 erty consisted of real estate, or some kind of personal property, infinitely greater than that which is imposed on a person whose property consists of moneys, credits, bonds, stocks, etc. But it is manifest, from the context and spirit of these provisions, that it was the intention of the constitution to provide an effectual barrier against a fruitful source,of oppression and misrule, arising from inequalities in taxation, by putting an end to all legislative discretion as to what should be taxed, what should bear the heaviest burden of taxation, and what and how much should be exempted from. taxation.
What is meant by the words, “ taxing by a uniform rule?” And to what is the rule applied by the constitution ? No language in the constitution, perhaps, is more important than this; and to accomplish the beneficial purposes intended, it is essential that they should be truly interpreted, and correctly applied. “Taxing ” is required to be “ by a uniform rulethat is, by one and the same unvarying standard. Taxing by a uniform rule requires uniformity, not only in the rate of taxation, but also uniformity in the mode of the assessment upon the taxable valuation. Uniformity in taxing, implies equality in the burden of taxation ; and this equality of burden can not'exist without uniformity in the mode of the assessment, as well as in the rate of taxation.. But this is not all. The uniformity must be co-extensive with the territory to which it applies. If a state tax, it must be uniform over all the state; if a county, town, or city tax, it must be uniform throughout the extent of the territory to which it is applicable. But the uniformity in the rule required by the constitution, does not stop here. It must be extended to all property subject to taxation, so that all property may be taxed alike, equally — which is taxing by a uniform rule. The constitution of the United States (article 1, section 8), *16, 17 provides, that “ all duties, imposts, and excises, shall be uniform, throughout the United States.” The predicate of the uniformity 16] here required, is not the articles required *to be taxed, but the duties, imposts, and excises, which import of themselves, a tax upon specific articles of property. That rule of uniformity, therefore, forbids discriminations in duties, not as between different articles of property, but as to localities, requiring the same tax as between different places throughout the United States, upon the same specific article. But the rule of uniformity in taxation, required by our state constitution, has a direct reference to the things taxed — to all taxable property — and forbids discrimination in the burden upon the different subjects of taxation. “Laws shall be passed taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise ; and also all real and personal property, according to its true value in money,” etc. No discriminations are allowed here to be made between, the tax upon moneys and that upon credits ; or between the tax upon credits and that upon stocks. Ail must be taxed by the same equal , rule. There must be uniformity in the tax upon all the different articles of property, as well as uniformity in the tax upon each.
But it is argued that the uniform rule in taxing, required by the constitution, applies only to moneys, credits, investments in bonds, stocks, joint stock companies, etc. Why should so important a rule as that of uniformity in taxation, be established by the constitution, and then limited in its operation to a few specific classes’of personal property ? It is said that all other property is to be taxed “ according to its true value in money.” This requirement, however, only fixes the standard for ascertaining the taxable valuation, and does not necessarily imply equality and uniformity, either in the rate and mode of assessment, or in the different localities throughout the state. The taxable valuation may be fixed according to the true value of property in money, and yet discriminations be made between different classes of property, and between different localities in the state, imposing unequal and unjust burdens of taxation. 17] *The language of the constitution is capable of a reasonable and consistent interpretation. The taxing power conferred, is coupled with a qualification or rule for its government. “Laws shall be passed, taxing, by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also,” — what?—'“taxing” (by the same rule, of course) “all real and *18 personal property,” etc. The implication carries with it the qualification annexed to the taxing power, expressed in the first clause of the sentence. If this had not been the case, the term “ taxing ” would have been repeated in the second clause, disconnected from the qualification attached it in the first clause, so as to read, “ and also, taxing all real and personal property according to its true value-in money."
The provision for taxing property “ according to its true value in money," in the second clause of the section, applies to all property, both real and personal, of every description, including the enumerated articles of moneys, credits, stocks, etc., mentioned in the first clause. The words “ all real and personal property,” in their legal import, include everything which is the subject-matter of private property. It is true that several classes of personal property, consisting of moneys, credits, stocks, etc., are expressly mentioned in the first clause of the section; but this was inserted by way of precaution and certainty, and not with the view of giving them any new and distinctive character taking them out of the denomination of personal property. Some years ago, moneys, credits, investments in bonds, stocks, joint stock companies, etc., were not subject to taxation in this state; and there has been much controversy, not only as to the propriety, but also touching the right of taxing credits and investments. in bonds, stocks, etc. To remove all question of doubt, therefore, on this subject, it was thought proper to require, by an express enumeration, that “ all moneys, credits, investments in bonds, stocks, joint stock companies,” etc., should be taxed. This provision, arising out of abundant ^caution, was not intended [18 to give these enumerated things any new distinctive classification, nor does it in fact exclude them from the denomination of personal property, to which, by their nature and legal incidents, they belong.
Mr. Broom, in his “Selections of Legal Maxims,” page 415, says: “ That the maxim, expressio unius est exclusio alterius, requires always great caution in its application. Thus, where general words are used in a written instrument, it is necessary in the first instance to determine whether those general words are intended to include other matters beside such as are specifically mentioned, or to bo referable exclusively to them; in which latter case only can the above maxim be properly applied.” In the interpretation of legal instruments, words used out of abundant caution are often to be tolerated at the expense of tautology. The object of the language *19 of the constitution under consideration was comprehension, not exclusion. The words, “all real and personal property," therefore, in the second clause of this second section, are to be taken in their most comprehensive legal import, including every kind of real and personal property whatsoever, not excepting the several classes of -personal property expressly mentioned in the first clause of the section. If this interpretation be in any sense liable to the charge of tautology, it certainly is not to that of repugnancy. If this had not been the meaning intended by the constitution, there would have been added to the words “ all real and personal property,” these words: “other than that above mentioned.” It is more in harmony with the settled rules of construction to convict the law-maker of some inelegancies in rhetoric, and the use of unnecessary words, than to depart from the leading object and intent of the instrument. This section of the constitution,’ therefore, would have expressed the same thing had the phraseology been as follows: “Laws shall be passed taxing, by a uniform rule, all real and personal property, according to its true value in money, 1 including all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise.'”
19] *Any other interpretation than this would lead to consequences at variance with the manifest spirit and true intention of the constitution. If moneys, credits, investments in bonds, stocks, joint stock companies, etc., may be subjected to a different rate of taxation from that imposed on other kinds of property; or if moneys, credits, investment in bonds, stocks, etc., may be taxed at less than their true value in money, while all other property is required to be taxed at its true value; in either ease, great and unfair inequalities may be created by legislative discretion. For example, a person owning property worth one hundred thousand dollars, consisting of moneys, credits, and investment in bonds, stocks, etc., might be taxed at the rate of ten per cent., while a person owning an equal amount of other kinds of property was required to pay a tax at the rate of two per cent.; or a person owning property of the value of one hundred thousand dollars in moneys, credits, and investment in bonds, stocks, etc.,, might be taxed at a uniform rate of taxation, but an unequal assessment on only fifty per cent, of its actual value, while all other property is taxed at its true value in money. In either case the inequality would be glaring and unjust. There can exist no sound reason why a person, whose property consists of moneys, credits, stocks, *20 etc., should, bear a less burden of taxation than that which is imposed on the lands and chattels of the agriculturist; the implements, machinery, and materials of the manufacturer; or the goods and wares of the merchant. And the constitution, truly interpreted, recognizes no such distinction.
By the tenth section of the law above recited, two classes of personal property, consisting of moneys and credits, are selected out; i and in effect, favored by an. exemption from taxation to the extent of the owner’s liabilities. Moneys, and, to a great extent, credits, constitute the most productive form of property. Those who jnvest their cap’ital in moneys and credits, and devote their attention to dealing in these *forms of property, generally make [20 large and certain profits. Why the attempt at a partial exemption of these two kinds of property from taxation, in violation of the plain language of the constitution, requiring laws to be passed taxing all moneys, credits, etc. ? Special exemptions or advantages of this kind to favor any particular class of persons, or any particular branch of business, are at war with the spirit and fundamental principles of our government. Yet this discrimination is strenuously insisted on by persons who sincerely repudiate the policy of unequal and unjust legislation. The reason which has probably led to this mistaken and unconstitutional provision of law is founded in the peculiar nature of the property thus partially exempted from taxation. Money, as such, has no inherent or intrinsic value within itself other than its exchangeable value. Being the medium of exchange itself, it is the most convenient and certain means of obtaining articles of property which possess intrinsic value for use or consumption. The only legitimate and useful purpose of money, therefore, being that of exchange, it is constantly passing from one person to another. A person may have a thousand dollars on hand on the day on which the assessor obtains the list of his property for taxation, and on the next day be required to pay it out on his liabilities, and not again during the year have on hand at any one time money to the amount of one hundred dollars. Again, a person may, in carrying on a particular branch of business, have on hand money to an amount exceeding one thousand dollars almost constantly during the year, and on the day before the assessor calls for hi's tax list, have even ten thousand dollars ; but on that day pay it out in the payment of debts, or otherwise, and on the following day, when his list of *21, 22 property is furnished to the assessor, have no money whatever for taxation.
Property in credits, in regard to its nature and character, is 21] somewhat similar to money. Many of the forms of credits *are passing daily from hand to hand, and in the exchange of property, performing some of the functions of money. The amount of the credits of persons engaged in business, vary largely from day to day. So that the amount of a person’s credits on the day on which the assessor calls for the tax list, may be no indication of the amount of his credits generally during the year.
These peculiarities in moneys and credits, which may have led to the unwarranted provision allowing a partial exemption by the deduction of liabilities, indicate rather the propriety of a provision ■for ascertaining the taxable valuation of moneys and credits, by an -average value or amount during the year, after the mode of listing ;and valuing'the stock in trade of the merchant, the manufacturer, -or the exchange broker. This is peculiarly the case in regard to •the listing and valuation of the moneys and credits of the merchant, whose stock in trade is taxed by an average valuation. For .•example, a .merchant engages in business on an investment of ¡twenty thousand dollars in goods, and in the progress of his sales, he converts his goods into moneys and credits, so that at the end of three months he has reduced his stock of goods to ten thousand dollars ; and has, for his sales five thousand dollars in money, and five thousand dollars in credits. He collects his credits, and from time to time during the year, reinvests his money and the proceeds of his credits so as to keep up an average of fifteen thousand dollars worth of goods during the year. But at the end of the year, when the assessor calls upon him for the list of his taxable property, his stock of goods is reduced to the amount of ten thousand dollars, but the amount of his moneys and credits increased to ten thousand dollars. This law would subject him to a tax upon «fifteen thousand dollars valuation of stock in trade, and ten thousand dollars valuation in moneys and credits, making five thousand dollars over and above his investment at any one period. 22] ^Although the taxable valuation of the moneys and credits of the merchant, and perhaps, of the moneys and credits of every other person, should be ascertained by an average for the year, yet the rule for estimatiug the taxable valuation is left, by the.constitution, to legislative discretion. The rule of taxation is prescribed *23 by the constitution; but the mode of ascertaining the value of property is regulated by law. The fact, therefore, that the taxable valuation of moneys and credits, is obtained by an estimate of the' amount on hand at the time the tax list is called for, instead of an application of the rule of making an average for the year, does not conflict with the constitution.
It has been argued that “ stock in trade ” is subject to a different rule of taxation from that which is imposed on other property. This is a mistake. The difference consists, not in the rule or burden of taxation, but simply in the mode of ascertaining the valuation. The principle of valuing by an average has been introduced because stock in tradeis constantly changing the article of its investment, and varying in the quantity on hand,’ from month to month.
The constitution places “moneys and credits ” on precisely the same footing, and subject to the same rule, as a basis of taxation, with all other taxable property, real and personal. Upon what principle, not applicable to other taxable property, can the amount of “ moneys and credits,” as a basis of taxation, be reduced and exempted from taxation to the extent of the owner’s liabilities? A person who has $5,000 of money on hand, and $5,000 more invested in notes and obligations, is certainly as able to pay his taxes as a person whose property consists of a farm worth $5,000, and cattle, horses and other live stock, worth $5,000. The former, as a general thing, makes larger profits than the latter, and calls most frequently for the aid of the government to protect and enforce his rights.
The practical operation of the deduction allowed by the tenth section of the law, exhibits an inequality and unfairness *wholly [23 inconsistent with the spirit and evident intent of the constitution. The following supposed cases illustrate the principle of its operation : A has a capital of twenty thousand dollars, consisting of five thousand dollars in money, and fifteen thousand dollars in notes, bills of exchange, and other credits; and carries on a profitable business in dealing in moneys, credits, etc.; but he is indebted to sundry persons in the aggregate amount of twenty thousand dollars. B has capital invested in goods, wares, and merchandise to the amount of twenty thousand dollars, and carries on the business of a merchant; but he is indebted to the amount of twenty thousand-dollars. C owns property to the amount of twenty thousand dollars, consisting of a farm worth five thousand dollars, cattle and *24 horses worth five thousand, dollars, and ten thousand dollars invested in machinery, materials, etc., employed in manufacturing; but he is indebted to sundry persons in the aggregate amount of twenty thousand dollars. Under the operation of this law, if the tenth section be valid, A would avoid all taxation, while B and C would each be compelled to pay a tax on twenty thousand dollars’ worth of property. Why should moneys, the most convertible and advantageous form of property, be favored by a partial indirect exemption, while real estate and investments in articles of merchandise, and in property employed in mechanical and manufacturing business, are taxed to the full extent of their value ? No satisfactory reason can be assigned for this inequality. Moneys and credits, more than all the other kinds of property, call for the protection and aid of the government in securing and enforcing the rights of property pertaining thereto. More than one-half of all the litigation in the state, which occupies the time of our courts of justice, relate to these two favored classes of property.
It must be conceded, that this tenth section is wholly indefensible, so far as it provides for the deduction of liabilities from “ moneys." 24] But it is said, that there is something peculiar *in the nature of credits; that the credits belonging to a person do not constitute substantial property, except so far as the gross amount of his credits exceeds the gross amount of his liabilities; and that beyond this, it was not intended by the constitution to make credits the basis of taxation. Had the principle of taxation adopted been that of taxing each person, not upon all the property he owned, but upon the amount he is worth, over and above his liabilities, there might have been some foundation for this position. But as it is, the constitution makes no such distinction as that above mentioned, in regard to the taxable amount of a person’s credits, but requires all credits to be taxed by a uniform rule with other property, at their true value in money.
In legal parlance, and in the sense in which the term is used in the constitution, credits are dioses in action — things incorporeal, consisting in the right of one person to demand and recover from another, a sum of money or other things in possession. The value of a credit grows out of the right to have and receive property in possession, either by a sale and transfer of the claim to another person in exchange for money or other things, or by requiring or enforcing payment from the debtor. Credits, therefore, although *25 fictitious, nevertheless constitute property — substantial, convertible, and productive property. Money is invested in credits for profit, and credits are given in exchange on the sale of property of all' kinds, real and personal. If É. holds a credit or obligation against B, it is not any the less valuable as property, because A may be indebted to C; and if A collect the amount of his claim against B, and apply the proceeds to the payment of his indebtedness to C, it amounts to the same thing, and is fully as valuable to him as if he had sold a tract of his land, and made the same application of the proceeds of the sale. If a person hold good obligations against sundry persons, of the aggregate value of ten thousand dollars, and be indebted to sundry other persons to the amount of ten thousand dollars, the fact of such indebtedness can neither ^lessen the amount nor the value of his obliga- [25 tions against others. The indebtedness being to persons, other than those whose obligations he holds, pould not be set off' or otherwise lessen the value of his credits. A person’s indebtedness constitutes no charge upon the credits which he holds against others, any more than it does upon any of his other property, real or personal. The constitution requires all credits, as well as “ all moneys,” etc., to be taxed. And, with deference to the opinion of others, I must confess myself wholly unable to comprehend the ground on which it has been claimed that the taxable credits of a person consist simply of the excess (if any) of the aggregate amount of his choses in action over and above the gross amount of his liabilities.
In estimating the taxable valuation of credits, they are not to be taken at their nominal amount, but like the valuation of other property, every circumstance affecting in any manner.their value should be taken into consideration. If the debtor be wholly insolvent, the credit is of no value, and therefore has no basis for taxation. If the debtor be in doubtful or failing circumstances, if the claims be disputed, contested, or involved in litigation, or if any defense by way of payment, or otherwise, either in whole or in part, against the claim, be known to exist, it should be considered, and all proper allowances made, m estimating its taxable valuation. The actual value in money of credits thus ascertained, con-t stitutes as proper a basis for taxation, as that of any other kind of property. To say that if a person be thus taxed upon his credits, " that is, upon his claims, which he holds against other persons, with *26, 27 out deduction, he is not taxed upon his property, hut upon his indebtedness, is, to say the least of it, a most glaring absurdity.
Investments in bonds, notes, and all the various forms of credits, produce their profits in the form of interest, without' labor. Money itself on hand, is dead and unproductive capital; but invested in credits it becomes productive, and that, too, without the labor of the owner. The goods and wares of the merchant require his unre26] mitting care and labor to *make them profitable; a farm, with all its implements and stock, would be wholly unproductive without the unceasing toil of the agriculturist; and the materials, machinery, etc., of the mechanic and the manufacturer are made productive only by their being accompanied with the labor of the operatives. A tax upon all those classes of property which derive their productiveness from labor, is, to some extent, a tax upon labor. But a tax upon credits is a tax upon capital alone, in its most productive form, unmingled with labor. To exempt credits from taxation, and throw the whole burden upon those forms of property which derive their productiveness from labor, would afford a most unfair and unjust advantage to capital over labor, oppressive in its consequences to the productive interests of the country.
It is alleged that the taxation of credits results in a double taxation ; thatacreditisthemere representative, the mere shadow of the property in possession, which it requires in payment; and that to tax both the credit and the property which it is said to represent, is double taxation. This is a fallacy. The value of a credit is not identical with the property which it would require to discharge it; but its value consists in the right of the creditor to require payment, and the obligation and ability of the debtor to pay. A valid credit against a responsible person, therefore, is not a mere shadow, but property possessing intrinsic value within itself. A sells his farm to B, at the price of ten thousand dollars, and takes B’s notes for .the amount, with a mortgage on the farm for security. B will pay a tax on the full value the farm, without deduction, and A will be very properly required to pay a tax on the full value of the credits against B, which he may choose to hold for many years, being paid interest thereon. The credits which A holds are profitable, valuable of themselves, transferable at any time in exchange for other property, and the means with which they may be ultimately paid, may be acquired by B many years after the notes are 27] given. These credits, therefore, are not mere shadows; %r0 *28 not substantially identical with the property in -which they are payable, or -with which they may be ultimately paid; but they are valuable, and possess the inherent elements of property.
Again, C sells to D a stock of goods of the value of ten thousand dollars, and takes D’s notes for the amount. D will be taxed upon the full value of the goods, and C upon the full value of the notes.
And again, E has ten thousand dollars in money, which he delivers over on general deposit to E, a banker, and takes a certificate of deposit therefor. E will bo taxed on the credit, evidenced by the certificate of deposit, and E will be taxed on the money, which, by the deposit, passed absolutely to his dominion and became his property, to use and control for his own purposes. Here E is not the holder of E’s money, but stands indebted to E for the amount of the money which passed and became E’s property. It is well settled, that the right of property follows the dominion over it; and +hat in all eases of a mutuum or deposit, where the mutuary or depositary has the option to return either the same identical article, or the same amount in kind, the right of property passes with the control over it, and the mutuary or depositary is indebted to the lender or depositor for the amount. Chase v. Washburn, 1 Ohio St. 244.
In neither of these supposed cases is there any such thing as double taxation. In each of these instances each person is taxed on the actual property and value which he holds and owns in his own right. The arguments urged against this position are accompanied with strong complaints of grievous and oppressive taxation. These complaints may have just foundation, but the remedy is not by relieving one class of taxable property, and consequently throwing a proportionably greater burden on the other property-in the state, but by retrenching the unnecessary sources of public expenditure, and reducing the expenses of the government to the only true, essential, and legitimate purposes for which it was constituted.
*It has been urged, that taxing moneys and credits, creates [28 double taxation in another form; that it causes the merchant to be taxed first upon the value of his property in goods, and afterward upon the same property converted into moneys and credits ; and that it causes the manufacturer to be taxed, first upon his property in the raw material, afterward upon a part of the same *29 property in the manufactured article; and again, upon a part of the same valuation converted by sales into moneys and credits. This is a flagrant error. And it arises not from a misconstruction of the law, but from a want of a knowledge of its provisions. There is nothing in this law requiring the same taxable valuation, whatever may be the mutations of the property in form, to be taxed more than once during the same year. The taxable property of every person is taken at his own listing under oath. And so far as the merchant’s stock of goods is reduced during the year, either by sales converting his goods into moneys and credits, or otherwise, so far he has the right, in listing the average amount of his stock in trade, to reduce the taxable valuation of his goods. In other words, in returning the average valuation of his stock in trade, the merchant is only required to take into the account, the amount of his goods in hand, making just allowance for that proportion of his goods which has been converted into moneys and credits. So it is with the manufacturer. In returning his raw material, he only takes into account the quantity actually on hand, making deductions of course for that which was consumed; and in returning the amount of his manufactured articles, he estimates only the average amount actually on hand during the year; so that it would require the addition of the average amount of the moneys and .credits received on sales during the year, to make up the full amount of his property invested in his business.
Upon this exposition of the statute, the question recurs, whether the validity of the tax imposed on property employed in banking 29] is affected by the unconstitutional provision *of the tenth section, and if so, to What extent, and in what manner.
The third section of the twelfth article of the constitution heretofore recited, provides that all property, effects, or dues of every description of all banks, and of all bankers, shall be taxed without deduction. There has been much controversy as to the true interpretation of this provision of the constitution. The section of the constitution immediately preceding this third section provides for taxing all property of every form and description, excepting the subjects of the few specified exemptions; and it has been said that there could have been no object whatever in the third section, unless it was to tax banks and bankers in a different mode, or upon a different principle, from that which was applicable to other persons. I am inclined to the opinion, however, that the history of the legislation *30 of the state on the subject of taxation for some years prior to the adoption of the constitution, as well as the circumstances attending its formati.on, very plainly indicate the purpose of this third section. Not only the policy, but also the right of taxing capital employed in banking, had been strenuously contested, and to a considerable extent successfully resisted. There had also been much controversy as to the form of property employed in banking which should constitute a basis of taxation. With a view therefore of putting an end to the controversy on this subject, and of defining with certainty the form in which property in this branch of business should be made a basis for taxation, this third section was inserted in the constitution.
Much criticism has been spent on the requirement that all property employed in banking should be taxed “ without deduction.” This provision could not, by implication, confer a right on other persons to make deductions which are excluded by the direct language of the second section. The third section must be construed in its connection with the second section. The latter provides that laws shall be passed taxing all property, in general and comprehensive language; and this language is followed by a few specified limitations, by *way of special exemptions, among which is the [30 exemption of personal property to an amount not exceeding two hundred dollars in value for each individual. This confers legislative authority to allow each individual, in furnishing the tax list of his personal property, to deduct therefrom an amount not exceeding two hundred dollars. And this is the only exemption authorizing deductions to be made in favor of individuals. The third section, coming immediately after this provision, requires all property employed in banking to be taxed “ without deduction.” The deduction here inhibited amounts simply to an express denial to the banks of the deduction allowed in the preceding section by the exemption in favor of individuals, and has reference to it. With deference to the opinions of others to the contrary, I am unable to give any other interpretation to the language employed, which appears to me to be reasonable, and to harmonize with the other provisions of the constitution. In specifying the property which shall constitute the basis of taxation, an exemption and a deduction amount substantially to the same thing.
I can not perceive any necessity for the words, “ without deduction” in the third section, with reference to the circulation of the *31 banks. By special authority, a bank is permitted to use its own notes or bills as money, and to pay them out and derive the same benefit from their issue which it would from an equal .amount of gold or silver coin. The circulatioai of a bank is a source of actual wealth to it; and inasmuch as the second section of the constitution does not permit individuals to deduct their liabilities from any of their property, I can not see how the prohibition of deductions by banks could have been deemed necessary with reference to their liability to redeem 'their circulation, when individuals were not allowed to deduct their liabilities on the obligations outstanding against them.
The reason for the exemption of a small amount of property for each individual which has been heretofore alluded to, does not ap81] ply to the tax upon banks and bankers. That *is a tax upon persons in a sjiecial character, employing the property taxed in a business especially authorized by the state, and in which other persons are not allowed to engage. Banking powers are not exercised by any person in his individual eajiacity. It appears from the seventh section of the thirteenth article of the constitution, that this special authority is conferred only on associations of persons, whether incorporated or not. Every individual, however, engaged in a banking association has the full benefit of the provision for the two hundred dollars exemption, in regard to the property held-by him in his separate and individual capacity. And therefore banking associations are required to be taxed upon their property employed in their special and exclusive business, without any deduction or exemption, such as is allowed to individuals out of regard to the necessities of life.
It has been urged that the term “ bankers,” used in the third section, was intended to bring within the operation of this section the private banker and exchange broker, persons carrying on business which is open and common to all, not requiring special statutory authority in any of its departments. The business of banking, in its most enlarged signification, includes the business of receiving deposits, loaning money, and dealing in coin, bills of exchange, etc., besides that of issuing paper money. None of this business has ever required any special authority, except that of issuing notes and bills to circulate as money. o The banks created by the authority of law are those which, in addition to the ordinary business of banking common for all persons to engage in, make and issue their paper *32 to circulate as money, which are termed banks of circulation. By a long course of legislation in this state, the business of banking has acquired a restricted legal signification, applying only to those banks which exercise the functions of issuing paper money. Such is the way in which the terms bank and banking have been used in the statutes of the state, with very few exceptions, since 1816; and such is the meaning given to them by the constitution, *as is [32 apparent from the seventh section of the thirteenth article, which is in these words:
“No act of the general assembly, authorizing associations with banking powers, shall take effect until it shall have been submitted to the people at the general election next succeeding the passage thereof, and be approved by a majority of all the electors voting at such an election.”
No other but paper-money banking ever sought statutory authority. And property employed in this kind of banking, for many years, was subject to amere nominal tax, and was claimed to be exempt from any further exercise of the taxing power. But there never was any question made as to the right of the state to tax the property of the private. banker and exchange broker who claimed no special privileges or exemptions. There could have been no object, therefore, in a special provision of the constitution to reach them. The business of the private banker and broker is one which may be carried on by any one in his individual capacity. And the very fact that the burden of' taxation on the property of individuals is made the standard by which to fix the burden of the tax upon banks and bankers, is conclusive, to my mind, that the property employed in banking, here provided for, is a tax upon banks and bankers in their specially-authorized character. With .all proper deference for the opinions of others to the contrary, I have been unable to reach any other conclusion myself than that the third section of the constitution, above mentioned, has reference to taxing property employed in banking carried on by banks of circulation, and not by private bankers and exchange brokers. The expression “ all banks and all bankers ” is very properly used in the constitution. The term “ banks" denotes the incorporated institution, and the term “ bankers ” the unincorporated associations exercising “ banking powers." It appears from the above-recited seventh section of the constitution that an act of incorporation was not *33, 34 deemed essential to the exercise of “banking powers;” hence the expression “ associations with banking powers,” which will apply to 33] associations of *joint partners with banking powers, as well as incorporated associations.
It is provided that all property employed in banking shall be so taxed, as always to bear a burden of taxation equal to that imposed on the property of individuals. This is not a mere corollary from the requirement, that all property of every description of “ all banks and of all bankers,” should be taxed; but it is prescribed as a rule of taxation. The burden of taxation here mentioned is not merely the rate of taxation. It expresses much more. It has reference to the actual value of all the taxable property of the person taxed, and comprehends the proportion which the tax assessed bears to the actual value of all his taxable property. So that it is required that the amount of the tax upon all property employed in banking shall bear a proportion to the actual value of the property, equal — not less, not greater, but equal — to the proportion which the amount of the tax imposed on individuals shall bear to the actual value of all their taxable property; that is, to the actual value of all their property, real and personal, after the deduction of the amount of the exemption allowed, not exceeding two hundred dollars for each individual. The constitution requires that all the property of every description owned by individuals (except that which falls within the specified exemption) should be taxed by a uniform rule, and at its actual value in money; and the burden of the tax thus imposed on the property of individuals is made the standard to which the burden of the tax upon property employed in banking is required to conform. This is the equality and fairness in taxation required by the constitution. And a statutory provision which allows a part of the taxable property of all persons not exercising banking powers to be exempt from taxation, diminishes the aggregate basis of taxation, and consequently throws a proportionably greater burden of taxation on property employed in banking than is imposed on individuals having the benefit of the exemption, and greater than is authorized by the constitution. The tenth section of the tax law, therefore, is un34] constitutional *and void; first, because it provides in effect for an exemption of a large amount of property from taxation which the constitution requires to be taxed; and, second, because, by an unwarrantable deduction from the taxable property of per *35 sons not exercising banking powers, -it results in tbe imposition of a burden of taxation on property employed in banking, greater than that which is imposed on the property of individuals.
Where a provision in a statute is of such a nature, and has such a connection with the other parts of the statute as to be essential to the law, its unconstitutionality vitiates the whole enactment. But if an independent provision, not in its nature and connection essential to the other parts of the statute, be unconstitutional, it may be treated as a nullity, leaving the rest of the enactment to stand as valid. In the instance before us, the tenth section of the tax law contains a separate, distinct, and independent provision. The fourth, fifth, sixth, and seventh sections provide the authority for listing all property for taxation, and prescribe by whom, where, and in what manner property shall be listed for taxation, expressly including moneys and credits; and the ninth section prescribes the rules for the valuation of the property listed. Ample authority, therefore, exists for listing property without the tenth section. So that the tenth section was inserted for no other purpose than to allow deductions of liabilities from moneys and credits. Strike out this section, and the balance of the statute is perfect as an enactment, and provides complete authority for listing property for taxation, expressly including all moneys and credits. The tenth section of the law, therefore, must be rejected as Void, and should be wholly disregarded, leaving the other parts of the statute to stand as valid and binding law.
The question arises here, whether the unconstitutionality of this tenth section of the law invalidates the assessment of taxes, which is the subject-matter of complaint in this case. If this assessment upon the complainant’s property be void, upon this ground, the whole assessment throughout *the state for the year 1852, [35 must be void upon the same ground. And if those who have resisted its payment, be entitled to be relieved from the assessment, those who have already paid, should, in justice, have the amount reimbursed to them by the state; and no revenue for that year could justly and legally have been paid into the public treasury. But what was the effect of the provision in the tenth section of the law, upon the validity of the assessment ? This provision relates only to the mode of listing property for taxation, allowing a certain portion of the taxable moneys and credits to be left off the tax list and consequently omitted on the duplicate for taxation. Regard *36 ing this provision as unconstitutional and void, if any moneys or credits were left off the tax list by means of it, they were improperly and wrongfully omitted; and the county auditor had ample authority, by virtue of the forty-sixth section of the law, to correct any such omission or erroneous return by any assessor. And should the county auditor have failed to perform his duty in this respect, there still existed a remedy by bringing the matter before the county board of equalization, at its annual meeting, or by an appeal_ to the auditor of state — and the performance of this duty could be enforced by the writ of mandamus. The law, therefore, having prescribed a mode for the correction of errors and omissions in the listing of property for taxation, the person who neglects to avail himself of the remedy thus prescribed, must be taken to have waived any objection to the assessment, so far as his own property is affected thereby. Errors and omissions will no doubt exist to some extent in the tax list of every year; and if this could be made a ground for invalidating and setting aside the whole assessment, it would become the moans of defeating the collection of all taxes; thereby greatly embarrassing the public authorities, and tending to the subversion of the government itself. No- such remedy would be admissible. Besides, there is no allegation in the bill, that there has been any error or omission in the tax list, or that any particular 36] jmrson or j)ersons have been allowed to withhold *their moneys and credits, or any -part of them from the tax list. The returns of the assessors do not show that any moneys and credits have been deducted from liabilities, and thereby omitted on the lists of taxable property. And from aught that appears, either from the averments in the bill, or otherwise, in this case, the officers engaged in the execution of this law may have had a correct understanding of their official duties, and, in obedience to their oaths to support the constitution, disregarded the void provision of the tenth section of the law, and listed moneys and credits without the unwarranted deduction on account of liabilities.
A question has been made in this case, touching the jurisdiction of a court of equity to interpose its extraordinary powers by injunction, in the case presented by the complainant. The bill seeks relief against an alleged threatened trespass, and avers the defendant’s pecuniary inability to respond in adequate damages. If the law under which the defendant is about to proceed, be wholly unconstitutional and void, as is alleged in the bill, the defendant would *37 be liable to damages in an action at law, to the extent of the injury which might be done to the complainant by the threatened wrong. Equitable relief by injunction against a tort, rests wholly upon the inadequacy of the remedy at law. It is well settled, that a court of chancery will not interfere by injunction to prevent a simple trespass, susceptible of compensation in damages in a proceeding at law, whether about to be committed in the pretended collection of a tax or otherwise; and to authorize the interference of this extraordinary power, there must be a case of apparent imminent danger of great and irreparable damage, for which an action at law would not furnish full indemnity. Mechanics’ and Traders’ Bank v. Debolt, 1 Ohio St. 591.
To bring this case within the principle of equitable relief, by injunction, it is alleged in the bill that the defendant is a person of insufficient pecuniary ability to respond in adequate damages for the wrong. This ground of equitable relief is obviated and removed by a statutory provision. It *is provided by the thirteenth [87 section of the statute of the 14th of March, 1853, entitled “an act to enforce the collection of taxes which now are, or may hereafter be due from banks,” etc., that any county treasurer shall be allowed, and paid out of the county treasury, not only reasonable counsel fees and other expenses incurred, but also all damages and costs which may be adjudged aginst him in any action at law or suit in chancery for performing or attempting to perform his duty in the collection of the public revenue. The right to this indemnity accrues' to the public officer on the recovery against him ; and should he be irresponsible otherwise, this claim upon the public'treasury, could be reached under legal process by the person recovering the damages. And besides this, where a public officer, under a mistake, and without competent aiithority, enforces the collection of the public revenue, and pays the same into the treasury, the person injured, after a recovery in damages, would have a strong equity to follow the fund in the hands of the public authorities ; and a proper sense of justice on the part of the government would require the money thus wrongfully received to be refunded. In -such a ease, therefore, it can not be alleged of the public officer that he is a person of insufficient ability to respond in damages in a proceeding at law, so as to lay a foundation for relief by injunction in a court of equity.
The injunction must be dissolved and the bill dismissed.
*38 Thurman, J.
The importance of the questions involved in this case, induces me to state, in my own language, the grounds upon which I concur in the decision just pronounced. These questions are as follows:
I. Are the 19th and 20th sections of the tax law of April 13, 1852 (50 Ohio L. 144, 145), which sections provide for the taxation of banks, in accordance with the constitution of the state ?
II. Is the 10th section of the same act, which permits individuals 38] not engaged in banking, and corporations not exercising *banking privileges, to deduct, when giving their tax lists, their liabilities from the amount of their moneys and credits, unconstitutional ?
III. If it is unconstitutional, may it bo treated as void without affecting the validity of the remainder of the act?
IY. If these questions be answered in the affirmative, is a case presented, entitling the claimant to the relief it seeks, namely a perpetual injunction against the collection of the tax assessed against it ?
I will consider these questions in the order I have stated them.
• I. Are the 19th and 20th sections aforesaid in accordance with the constitution of the state ?
They are certainly in accordance with its letter, and for reasons that I will give under another head, they are, in my judgment, strictly consistent with its spirit. Indeed, this is not denied by complainant’s counsel. Their argument is not that the basis of bank taxation, as prescribed in sections 19 and 20, is wrong, but that the burden of taxation upon the banks is improperly increased by the deductions allowed by section 10. This brings us to the next question.
II. Is section 10 unconstitutional? That section is in these words:
“ Sec. 10. In making up the amount of moneys and credits which any person is required to list for himself or any other person, company, or corporation, he shall bo entitled to deduct from the gross amount of moneys and credits, the amount of all bona fide debts owing by such person, company, or corporation, to any other person, company, or corporation, for a consideration received; but no acknowledgment of indebtedness, not founded on actual consideration, believed, when received, to have been adequate, and no such acknowledgment made for the purpose of being so deducted, shall be considered a debt within the meaning of this section ; and so much only of any liability, as surety for others, shall be deducted, as the person making out the statement believes the surety is legally and equitably bound to pay; and so much only as *39 he believes such surety will be compelled to pay, on account of the inability or insolvency of the principal debtor; and if there are other sureties who are able to contribute, then only so much as the surety in whose behalf the statement is made will be bound to contribute ; provided, that nothing in this section shall be so construed as to apply to any bank, company, or corporation exercising banking powers or privileges.”
*This section is impugned on the ground that the deductions [89 it permits are forbidden by the constitution. The provisions of the constitution that bear upon the question are sections 2 and 3 of article 12, and section 4 of article 13. By the first of these sections it is ordained that,
“Laws shall be passed, taxing, by a uniform rule, all moneys,credits, investments in bonds, stocks, joint stock companies, or othérwise; and, also, all real and personal property according to its true value in money; but burying-grounds, public school-houses, houses used exclusively for public worship, institutions of purely public charity, public property used exclusively for any public purpose, and personal property to an amount not exceeding in value two \ hundred dollars for each individual, may, by general laws, be exempted from taxation; but all such laws shall be subject to alteration or repeal; and the value of all property, so exempted, shall, from time to time, be ascertained and published as may be directed by law.”
It can not be denied that the letter of this section requires -all moneys and credits to be taxed. No part of them, or of either of them, can be exempted, if we follow the plain, unambiguous language of the section. It can not be done by a direct exemption, by name, nor by an indirect exemption, under the name of deductions. The one is as much a violation of the letter of the section as the other. Even the two hundred dollars’ exemption, authorized by the section, can not be of moneys or credits. It is confined to “personal property,” and although “personal property,” in legal signification, includes moneys and credits, it is apparent that wherever it is employed in this section it is used in a limited sense and does not include them. It is only necessary to read the section to see that this statement is correct. There is just as much reason for saying that a man may deduct his debts from his real or personal property, as to say that he may do so from his moneys and credits. The language that requires all real and personal property to be *40, 41 taxed, with certain exceptions, is no moro stringent, no inore comprehensive or explicit, than that requiring all moneys and credits to be taxed.
It is argued, however, that there is a distinction. It is said that a man’s real and personal property is property in possession, that 40] his credits are only choses in action, and *that if the law tax him on all that he is entitled to receive on these choses in action after the payment of his debts, he is taxed upon all his credits. With great respect for those who advance this argument, I must say that it seems to me wholly untenable. I find no warrant for it either in the constitution or in reason. There is not a word in the constitution that makes any difference in regard to taxation between property in possession and rights in action, except that certain limited exemptions of the former are allowed, while no exemption of the latter is permitted. Nor is it true that in legal signification, or in popular parlance, the term “ credits ” means what is due to a man after deducting his liabilities. His claim may be upon one man, his liabilities to another; and even in the case of mutual credits, there may be nó right of set-off, for one may be due at one time, and the other at another. The idea of the constitution is not that each man shall be taxed upon exactly what he is worth. That is a favorite idea with some political economists, but it finds no place in, our constitution. The objects of taxation, declared in that instrument, are the real and personal property and choses in action in the state. The latter are considered for purposes of taxation as much property as the former. They are considered as much in the possession of the tax-payers as the former. They are to bo taxed by the same uniform rule; taxed at their true value in money; taxed at the same rate as other property.
But it has been suggested that this construction requires every chose in action to be listed at the amount due upon it, although it may be worth but half that sum, or may, indeed, be wholly worthless. There is no foundation whatever for this suggestion; but if there were, the same thing might, with equal truth, be said, were section 10 sustained. For it is not by a deduction of his liabilities that a person escapes taxation upon a chose in action that is worthless, or is taxed upon the actual value alone of his claim. He may owe nothing whatever, and therefore have nothing to deduct; yet he is not 41] bound to list a worthless note; for being worthless, *it is not, in reality, a “ credit,” if indeed it is so even in name. Besides, it *42 would not be a strained construction, but, on the contrary, would be in exact conformity to the spirit of the instrument, to say that the word “its,” in the sentence “according to its true value'in money,” in section 2 of the constitution, refers to .each of the objects of taxation, previously enumerated, to choses in action as well as to real and personal property; and that the sentence should be construed as if it read “ according to their true value in money.”
But-if the distinction sought to be established could be drawn between property and credits, what ground is there for any distinction between money and other property? Money is not a chose in action. It is property in possession of its owner, as much so as is his realty. Why, then, shall his debts be deducted from his money? Will it be said that a man has no money except what remains after the payment of his liabilities ? The proposition is a contradiction in terms.. And there would be just as much truth in saying that he has no lands or goods except what would remain after their application to pay his debts. His lands and goods are as much bound for the payment of his obligations as his money. Their application to that object can be enforced as readily — nay, ' more so — than can be the appropriation of his money. His money is so securely his own that no lien can be a acquired upon it in his hands, while his lands and chattels may become bound for his debts in various ways. I find it altogether impossible to conceive any reason why there may be a deduction from money that would not equally favor a deduction from land. I find no argument that seems to me more than plausible to admit-deductions from either. The constitution declares, in express terms, that laws shall be passed taxing “ all moneys.” Instead of this, we have a law that taxes only so much of a man’s money as remains after deducting his liabilities. His money is in his possession, his debts may not become due for years, yet they are to be deducted. He may never apply a cent of his money to discharge *them; they may, in [42 fact, never be discharged; yet, by this process of deduction, his money escapes all taxation.
But not only is there nothing in the constitution expressly authorizing the deductions in question, but all its implications are against them; for it enumerates what may be exempted, and these deductions are not in the enumeration. The familiar maxim, expressio unius est exclusio alterius, has as direct an application here as in any case that can be conceived. I am aware that it is *43 argued that the exemptions mentioned in section 2 are not deductions. It is said that the idea of the constitution is, that the law may exempt certain specific articles, not exceeding two hundred dollars in value (as, for instance, a horse, a cow, etc.), from taxation, and that it does not contemplate the deduction of $200, or any sum, from the gross amount of a man’s personal property. But the legislature have not so construed it; for, in this very tax law, they permit just such a $200 deduction. And I think their construction, in this particular, right. The leading idea of the constitution is equality; that government should do by one man as it does by every other. Now, this equality would, in practice, be destroyed if the $200 exemption wore of specific articles. What thall they be ? Shall a horse be one of them ? Then every person who has no horse loses the benefit of the exemption, and so of any other specific article that might be exempted. The only fair mode, the only mode consistent, as I think, with the spirit of the constitution, is not to exempt specific articles, but to deduct the $200, or any less sum that may bo fixed, from the gross amount of personal property. And I find nothing in the language af the constitution that forbids this.
But what is this argument I am considering but a mere change of words? Is there anything of substance in it? What is the practical effect of allowing the deductions permitted by section 10? Plainly, to exempt just so much of the moneys and credits in the state from taxation. An individual has $1,000 in money, and owes $600. He is taxed, according to section 10, upon only $400 of his 43] money. The residue *is exempted from taxation. If this can be done by merely calling an exemption a deduction, I know not where we are to stop. I do n’t know what construction will ultimately be given to the various provisions of the constitution, if what is plainly inadmissible when called by one name is perfectly lawful when called by another. It is the thing itself, I imagine, and not the name it bears, that determines its validity or invalidity.
But if there is any doubt as to the construction of section 2, it is wholly removed, it seems to me, by the other sections to which 1 have referred. In regard to taxation, equality is the great idea of the constitution. Inequality was the pre-existing evil. Equality is the remedy. Thus, section 2 requires all property (I use the word here in its broad sense), burying-grounds, certain property devoted to religious, charitable, and public uses, and $200 of per *44 sonal property excepted, to be taxed. It is to be taxed at its true value in money, and by a uniform rule. There is to be no false valuation, no rule that exempts some property and casts the burden of government upon the rest; no different rates of taxation upon different kinds of property in the same locality. Such is section 2. All is uniformity, all equality. But lest this section might'be construed to relate to individuals alone, we have it declared in section 3 of the same article, that “all property employed in banking shall always bear a burden of taxation equal to that imposed on the property of individuals;” and, again, in section 4 of article 13, that “the property of corporations, now existing or hereafter created, shall forever be subject to taxation, the same as the property of individuals.”
But let us examine more particularly the provisions of section 3, for it is upon this section that the advocates of the law mainly rely. In their judgment, it establishes a rule of taxation for banks and bankers different from that governing individuals otherwise employed. The section is in these words :
*“ Sec. 3. The general assembly shall provide by law for tax- [44 ing the notes or bills discounted or purchased, moneys loaned, and all other property, effects, or dues, of every desci’iption (without deduction), of all banks now existing, or hereafter created, and of all bankers, so that all property employed in banking shall always boar a burden of taxation equal to that imposed on the property of individuals.”
Now, if equality of taxation is meant to be secured by the constitution, it follows that one of two constructions must be given to this section, for there are but two constructions that will attain that object, First: if it he held that individuals may deduct their debts, as provided in section 10 of the tax law, then it must also bo held that banks and bankers may do likewise; otherwise there is no equality. Hence, it has been suggested that section 3 only moans to enumerate the objects of taxation belonging to a bank, or banker, in the same way that the objects of taxation are enumerated in section 2, and that the words, “ without deduction,” in section 3, are used as synonymous with 'the words, “ without exception.” That the true reading is, that all notes or bills discounted or purchased, moneys loaned, and all other property, effects, or dues, without exception, of every bank and banker,' shall be taxed, etc.; by *45 which reading the section would be no more stringent than section 2, which requires all moneys, cerdits, etc., to be taxed; and hence if deductions can be made under one section, they.can under the other. But this construction seems to me inadmissible. First, because I do not think that the deduction in question can be made under section 2. Secondly, because the words, “ without deduction” are not synonymous with the words, “ without exception.” And thirdly, because this construction would permit the banks to deduct their circulation, which I can not believe was ever intended.
The other construction that secures equality, is that given to the constitution by the majority of the court, which forbids all deductions, or exemptions, except those specified in section 2.
The advocates of the law say that banks and bankers can make 45] no deductions, that to allow them to do so would violate *seetion .3, which forbids deductions. So say we; but this fact, instead of suj>porting section 10 of the law is fatal to it. For this same section of the constitution declares that the objects of taxation belonging to banks and bankers shall be taxed, “ so that all property employed in banking shall always bear a burden of taxation equal to that imposed on the property of individuals.” The burden is to be not less, not greater, but equal. Now it can not be equal if individuals may deduct their liabilities from their moneys and credits, and banks and bankers can not. If it be conceded that banks and bankers can not deduct, the only way that their burden of taxation can be made equal to that of individuals is to say that deductions are forbidden to the latter also. And unless this is said the property of. the state is not taxed by a “ uniform rule.”
It is argued, however, that these words, “so that all property employed in banking shall always bear a burden of taxation equal to that imposed on the property of individuals,” are a mere deduction from the premises in the same section ; that the constitution regards the taxation of banks and bankers without permitting them to deduct, as precisely equal to the taxation of individuals not employed in banking, although the latter may deduct. The mere statement of this proposition would seem to refute it. It makes the constitution tell a plain falsehood on its face. It makes it say that it means equality when it means inequality. It converts one of its substantive provisions, in harmony with the whole spirit of the instrument, into a false deduction. It makes the con *46 stitution not merely a law, but a commentary upon that law. It supposes it to give reasons for its provisions, and concedes that the reasons given are false. I can not so construe it. I can not turn any part of it into a mere argument. I regard its provisions as law, and not deductions from law. 1 regard it as truthful and not deceptive. And when the language of any of its provisions is plain and unambiguous, when the natural import of the words is in harmony *with the rest of the instrument and with its whole [46 spirit, I know of no rule of construction that permits such natural import to be disregarded.
But it is asked why was section three inserted at all if it was not intended to establish a rule as to banks and bankers different from, the rule respecting individuals ? With more propriety I might ask why was section four of article three inserted, which provides that “the property of corporations, now existing or hereafter created, shall forever be subject to taxation the same as the property of individuals?” There'was no absolute necessity for this section, for without it section two of article twelve would have embraced these corporations. But it was inserted out of abundant caution, that there might be no doubt either as to existing or future corporations what would be the rule of taxation. So section three was inserted, that there might be no doubt how existing, as well as future banks and bankers, whether incorporated or unincorporated, were to be taxed; that there might be no doubt what property of theirs was to be the object of taxation ; and further, to deprive them of even the $200 exemption, which may be permitted to individuals under section two. And hence it is that we find in it the words “ without deduction.”
It is said, however, that in the debates of the constitutional convention the idea is nowhere found that deductions from the moneys and credits of individuals would not be permitted. This may be so. I do not know how the fact is. But suppose it to be so, what weight should it have against- the plain language and manifest spirit of the instrument ? None whatever. Upon a doubtful question some respect is undoubtedly due to those debates. No more important body ever sat in the state ; perhaps none that contained more learning and ability. But the debates of a body that forms a constitution or law are proverbially unsafe guides for its interpretation. Those who speak are generally few compared with those who vote, and among the debaters themselves there is sel *47, 48 dom seen a uniformity of construction. The advocates of a pro-47] vision are often silent as to some of its necessary ^results in order to avoid opposition, and its enemies sometimes misconstrue its meaning or exaggerate its consequences in order to defeat it. Debates are not always listened to, and a speaker is liable to be misunderstood or misreported. A brief speech on the floor sometimes acquires a wonderful length in print; and reasons that tho body never heard may first see the light through the agency of the press. In the meantime the law has been adopted, each membei voting upon it according to the light' of his own judgment.
For these and other reasons that might be given, the debates of even a body that finally enacts a law, can seldom be relied on for its true meaning. They can never overcome its plain, unambiguous terms. But the convention was not such a body. It ordained nothing. It merely recommended a constitution to the people, and it is to the vote of the latter that the instrument owes all its validity. The question, therefore, is not how did the convention, but how did the people understand it? In order to ascertain this, what guide have we so safe as the plain, natural import of its words ? For one man who read the debates of the convention, there were probably hundreds who read the constitution before voting upon its adoption. Each one had a right to suppose that its language was used in its ordinary signification. Each one had a right to suppose that it sjtoke truth upon its face ; that there was no deception in it; that when it used the term equality, it meant equality, and that if adopted, it would be so construed. As before remarked, the existing evil was inequality. It was to be remedied, not by establishing a different kind of inequality, but by ordaining a uniform, equal law.
And why not do so?- Why make 'discriminations that have no foundation in justice or policy? Why say to the man who owes for his farm, you shall not deduct your debts, and at the same time say to him who has ten times the value of tho farm in tho shape of money, you may deduct yours ? Why make the same unjust discriminations against the merchant, the manufacturer, the mechanic, in a word, everybody, who owes for lands, goods, or chattels ? 48] What peculiar %nerit over these citizens has the man who hoards his money instead of paying his debts, or invests it in the purchase of claims upon his neighbors, that his means, to a largo extent, should escape taxation, while all their property, save fifty dollars in value, is taxed ? And where is the policy of encouraging *49 backwardness in the payment of debts? Why offer a bonus for delay in discharging one’s obligations ? Why make it the interest of an individual not to settle with his creditor until after the assessoi has been around and taken his list ?
I make these remarks to show that there is nothing in the prin ciples of justice, nothing in public policy, nothing in the spirit of the constitution, that requires us to disregard the plain letter of that instrument. On the contrary, they all concur, in my judgment, in requiring the construction we have placed upon it. I grant that it would be more equitable to tax every man upon precisely what he is worth. But as this can not be done under the constitution, as lands and goods must be taxed without deduction, justice requires that the same rule should apply to other property. The rule should be uniform, and so the constitution requires it to be. Depart from this, and you discriminate against one kind of business tc foster other kinds of business; you grant privileges'to one species of property, which you refuse to all others ; you favor one class of men at the expense of the rest of community. This the tenth section of the law does, and as it is opposed, in my judgment, to both the letter and spirit of the constitution, I hold it to be void.
This brings me to the second question : May that section be treated as void without affecting the validity of the remainder of the act ? I think it may. Strike that section out, and the law permits no deduction from moneys and credits. There is no necessity, therefore, for holding the entire act to be void. The unconstitutional provision is not so connected with the remainder as to vitiate all. The bad may be rejected, and the good left.
*Such being our views, it remains tobe considered whether [49 the complainant is entitled to the relief sought; namely, a perpetual injunction against the collection of the tax assessed against if. This question might be briefly disposed of. There is no averment in the bill that any person in Ohio has been permitted to make deductions from his moneys and credits. Unless this has been permitted, the tax assessed against the complainant is no more than is proper. Now, we can not, ex efficio, take notice that deductions have been made. We can not, therefore, say, for aught that appears on this bill, that the complainant is improperly taxed.
But, as the bill might be amended, I Save considered the question as if it contained the necessary averments, and, after the most mature deliberation of which I am capable, I feel compelled to *50 deny the relief. The complaint is that some persons have escaped their proper proportion of taxation, by which means the complainant is taxed too much. If this be true, as to the complainant, it is equally so as to every corporation and every individual in whose favor no deduction has been made. If the tax assessed is wholly unconstitutional and void as to the complainant, it is equally so as to an immense number of the tax-payers of the state. The question is, therefore, one whose magnitude can hardly be exaggerated, audit demands all the consideration that it has received. The tax-payer ought not to be required to contribute more than the constitution exacts, and if he is so required, he ought not to be remediless. On the other hand, the demand of too much should not exonerate him from the payment of his proper share; and if a court of equity could give relief, it would seem but equitable to make him, in the first instance, pay the proper amount.
But what means have we of ascertaining the proper amount? None whatever; nor is it at all probable that any evidence could be furnished that would enable us to even approximate it. For, as the rate of state taxation is fixed with reference to the grand 50] aggregate of all the taxable ^property returned in the state, it is obvious that, in order to ascertain'the excess of the state tax demanded of the complainant, we would have first to know the amount of all the property in the whole state that had improperly escaped taxation. And in regard to the county, township, and city taxes, we would have in like manner, to learn what had escaped in their respective boundaries.
This looks like an impossibility. If so, does it follow that as the bad can not be separated from the good, the whole tax muu fall ? If we so hold, we must 'be prepared to say that whenever an assessor, either willfully or innocently omits to get a list of all the taxable property within his jurisdiction, no taxes can be collected at all; for by such omission, those whose property is listed are taxed more than if the omission had not occurred.
Let us suppose, for instance, that by some accident no list was taken in the city of Cincinnati, or that the list was lost or destroyed before the assembly had fixed the levy for state purposes. It is evident that the grand aggregate of the state would be greatly diminished, quite as mucli so as it has been under the 10th section complained of. But would it follow that no tax for state purposes could be levied anywhere in the state ? Could every tax-payer *51 out of Cincinnati obtain an injunction, because the want of the Cincinnati list had increased the rate of taxation upon his property? I can not so hold, for to do so would, in my judgment, render it impossible ever to Collect any taxes in the state. It may safely be affirmed that there has never been a year since the state existed, that a large amount of property, subject to taxation, has not escaped, and thereby the listed property been burdened too much. This takes place every year, in every township, city, and town, and will forever take place. What remedy can a court of equity apply ? I see none at all.
Neither is the treasurer who has distrained, liable; for the fault, if fault there is, is not his. The error has occurred in the listing, with which he has nothing to do. It was not he who permitted the deduction to be made, and the duplicate ^delivered to him [51 contained no evidence of any such deductions. He, therefore, is not responsible, as was decided in Loomis v. Spencer et al., 1 Ohio St. Whether there is any other officer liable, or whether there is at last found a wrong without a remedy, it is not now necessary to decide. It is sufficient that we can not afford the relief sought by the hill.
I have said nothing upon the question made by the bill, whether section 60 of the banking law protects the complainants from the imposition of any other tax than that therein specified, that question having been decided at the last term. For reasons that it is unnecessary to occupy time by stating, I concur in that decision.
Corwin, and Caldwell, JJ., concurred; Ranney, L, dissented.